# UNITED STATES DISTRICT COURT.

## J. A. AND J. D. SECOR agt. THE STEAMBOAT HIGHLANDER.

*Held* by the court—1. That if it can be fairly inferred from the stipulations of the contract that the libelants meant to trust to the personal responsibility of the owner, the contract is inconsistent with the exercise of a lien, and the same is waived. (17 *How. R.*, 53.) And it would also be waived if an unconditional credit were given for the payment, extending beyond the time for which a lien is given by the state law. (7 *Peters*, 324.)

2. That the fair import of the lien law of this state is, that the material man shall have a lien for what the owner agrees to give him in payment for his work and materials, provided that which is agreed to be given is by the agreement to be given before the expiration of the time allowed by law for the lien to exist.

3. That the owner of the *Highlander* agreed to pay the libelants by a note at three months, to be given when the work was finished, and for the fulfillment of that payment the libelants had a lien. And if the note for $1,400, at three months, had been given or tendered by the owner, the lien would have ceased, as in that case there would have been a credit extending beyond the time allowed by the state law for the existence of the lien.

4. But the note not having been given or tendered, the libelants still have a lien upon the boat, as well for the balance upon the contract, as for the extra work.

5. Wharfage not an item of lien in such a case, it is not a material furnished nor a necessary incident of the contract.

6. In order to tax witnesses' fees under the act of congress, (10 *Statutes at Large*, 167,) it must appear that they have actually been paid *eo nomine* at or before trial.

THE libel in this case was filed to recover for work done, and materials furnished by the libelants to the steamboat. A contract in writing was made between the owner of the

boat and the libelants on the 2d of February, 1855, by which the libelants agreed to build and put on board the steamboat a boiler, and do certain other work for which the owner agreed to pay $4,400, as follows: $1,000 on March 1, $1,000 on April 1, $1,000 when the boiler was put on and all the work completed, and the balance in a note payable three months from the completion of the work. The boat was to run between New York and Albany. The work was finished June 5, 1855. The three cash payments were made, but the note for $1,400 was never given or tendered. Some exra work was done to the boat, the amount of which was disputed. And the agent of the libelants coming to receive payment of both claims, the owner offered to give a note at three months for $2,500, in satisfaction of both. This was denied, and the libel then filed.

The respondent claimed that the libelants, by agreeing to receive a note at three months from the completion of the work, had waived the lien given them by the state law upon the boat for the $1,400. For the rest it was admitted that he would have a lien.

D. McMahon, *for libelant.*

E. C. Benedict, *for claimants.*

Ingersoll, D. J. The demand of the libelants in this case consists of two claims; one of these claims is for work and labor done and performed on the engine of the *Highlander*, amounting in the whole to several hundred dollars. It is admitted by the respondents, that for this claim, they, the libelants, have a valid lien upon the boat, which can be enforced in admiralty, and that it must be referred to a commissioner to ascertain and report the amount that is justly due.

The other claim is contested, and it is insisted that for it there is no valid lien, and that the boat cannot be holden in admiralty for the payment of the same. It consists of

a demand claimed to be due for building and furnishing the boat with a boiler. The boiler was made by the libelants and by them furnished to the boat, in New York, she at the time belonging at the port of New York; she was therefore a domestic vessel. The contract was entered into on the 2d day of February, 1855. By it the libelants agreed to build a boiler for the steamer, according to certain plans, in good and workmanlike manner; to take off the old boiler; to put the new boiler on board; to put up one blower engine and two blowers; to put up all pipes, and make all connections, all in good order, ready for steam, for the sum of forty-four hundred dollars and the old boiler. And the owners of the boat agreed that the libelants might do the work, and that they would pay the said sum of $4,400, in manner following: $1,000 on the 1st of March then next following; $1,000 on the 1st of April; $1,000 when the boiler was put on board and all the work completed, and the balance of $1,400 by note, at three months from the time of the completion of the work. There was no time stated in the contract when the work was to be completed. It was therefore to be done in a reasonable time. The work agreed to be performed by the libelants was finished on the sixth day of June, 1855.

The three $1,000 dollar cash payments were made before the filing of the libel, though not punctually at the time agreed upon. The libel was filed on the 8th day of August, 1855. The note of $1,400 was never given to the libelants, or tendered to them, though the owners of the boat resumed possession of her upon the completion of the work. The libelants now seek to enforce the payment of that $1,400.

The laws of New York give to persons who furnish work and materials of the kind furnished by libelants to vessels like the *Highlander*, a lien upon the vessel for work and materials so furnished, which is to continue for a certain period of time after the possession has been parted

with. But it is insisted by the respondents, that in this, that by the contract entered into the lien for this $1,400 was impliedly waived; that a lien for this $1,400 under the state laws is inconsistent with the contract, as the vessel was a domestic one. It is not claimed by the libelants that any lien exists except by virtue of the laws of the state. If by the stipulations of the contract it can be fairly inferred that the libelants meant to trust to the personal responsibility of the owners of the boat exclusively, for the payment of those $1,400, as agreed, that would be considered as a waiver of the lien, without any express words to that effect. If it can be so fairly inferred, then the stipulations of the contract are inconsistent with the exercise of a lien, and the same is waived. (*Raymond et al.* agt. *Tyson*, 17 *Howard*, 73.) And if by the contract an unconditional credit is given for the payment of this $1,400, extending beyond the time which the law gives to the lien, that would be considered as a waiver of it. The giving of such credit would be inconsistent with its exercise. (*Peyroux et al.* agt. *Howard et al.*, 7 *Peters*, 324.) But the mere fact of giving credit for work done and supplies furnished a ship, will not extinguish a maritime lien, or be considered as a waiver of it. (*The Nester*, 1 *Sumner*, 73.) Nor will the taking of a note, payable at some future day, be considered as such waiver. (*The Barque Chusan*, 2 *Story*, 465; *Sutton* agt. *The Albatross*, 2 *Wallace*, 327.) To make the giving of such credit a waiver of such lien, it must be extended beyond the time which the law gives to the lien.

By the laws of New York in force at the time the contract was entered into, it is provided, that whenever a debt amounting to fifty dollars shall be contracted by the owners of any vessel, on account of any work done or materials furnished to such vessel, such debt shall be a lien upon such vessel. And it is provided, among other things, that when the said vessel shall depart from the port

at which she was when such debt was contracted, to some other port within the state, such debt shall cease to be a lien, at the expiration of twelve days after the day of such departure.

By a subsequent law of the state, enacted on the 25th day of March, the time for which such lien shall attach, after the vessel shall have departed to another port, is extended to sixty days. The fair import of the law is, that he who performs work or furnishes materials to a vessel, amounting to over fifty dollars, shall, in consideration of such work performed or materials furnished, have a maritime lien upon the vessel, for the security of that which is agreed to be given him by the owner for such work and materials; provided that which is agreed to be given, is by the agreement to be given before the expiration of the time allowed by law for the lien to exist. In looking at the terms of the contract, in connection with the laws of New York on the subject of a maritime lien, there is not sufficient evidence discovered by which it can be fairly inferred that the libelants meant in every event to trust to the personal security of the owners of the boat exclusively, for the performance of that which the owners agreed to do in reference to this $1,400.

By the terms of the contract there was no unconditional credit given to the owners of the boat, for the payment of this $1,400, much less was there an absolute unconditional credit given for its payment, extending beyond the time which the law gives to the lien. It was to be paid by a note when the work was finished, and before the boat could sail to another port. That was the agreement of the owners. That was a mode of payment agreed upon by the parties, and which was to be made when the work was finished; and for the fulfillment of the payment as agreed, the libelants had a lien. And if the owners of the boat neglected and refused to give a note, according to the terms of the contract, then at once a right of action existed

in favor of the libelants, and the lien could be enforced. If the note had been given by the owners, and accepted by the libelants, then the lien would have ceased, as in that case there would have been a credit extending beyond the time which the law allows for the continuance of the lien, and such credit would be inconsistent with a lien. In such a case there would be no demand in favor of the libelants which could be enforced, until the expiration of three months. And if the contract had been in reference to this $1,400, that it should be payable three months after the work was finished, and after the possession of the boat had been resumed by the owners, without saying anything about a note, then there would have been an absolute unconditional credit given for this sum, extending beyond the time which the law gives to the lien, which would have been inconsistent with its existence, and in such a case it would be waived.

The boiler having been finished by the libelants according to the contract, the possession of the boat was resumed by the owners on the 6th day of June, 1855, that being the day when the work was finished. It was the duty of the owners, then, to have given the note. The note never was given. It was never tendered on the 10th and 11th of July. The agent of the libelants, with both of the claims in their favor, went to one of the owners for the purpose of a settlement. The owners objected to a number of charges in the bill for the engine work, and refused to pay till they were adjusted. At a subsequent period, these items objected to having been adjusted, the agent went to the owners again, with both bills, to receive payment. The owners then offered to give a note for $2,500, at three months, for both claims. This is all they offered to do. The agent told them that he came to settle, according to the terms of the contract. The answer of the owners was an offer of the $2,500 for both claims. This was declined, and the libel was soon thereafter filed. There

was not only a neglect on the part of the owners to give a note according to the terms of the contract, but a refusal so to do.

The respondents further insist, if there was a lien on the boiler contract, that the suit has been prematurely brought. The complaint in the libel is, that the owners of the boat had neglected and refused to pay this $1,400, according to the terms of the contract. The terms of the contract were, that it should be paid by a note, at three months from the time the work was finished. This the owners neglected and refused to do. There was therefore a breach of the contract before the libel was filed.

The decree of the court, therefore, is, that the libelants do recover not only what is justly due them for the engine work, but also the balance due on the boiler contract, and that it be referred to a commissioner to ascertain and report the amount justly due.

The commissioner, to whom was referred the assessment of the damages reported due to the libelants $2,888.95.

The demand consisted of two parts, 1st, work per contract $1,410, balance due on contract, and $1,521$\frac{89}{100}$ for extras. The claimants excepted to the report of the commissioner, and claimed deductions as follows, viz: $411.66 as being overcharges and as belonging to the contract.

The exceptions were argued before his Honor S. R. BETTS, D. J., by Mr. McMAHON, *for libelant*, and Mr. C. L. BENEDICT, *for claimants*.

BETTS, D. J. I think the report must stand with these corrections :

1. Demand of wharfage not being demanded in the libel cannot be recovered. It is not a material furnished, nor a necessary incident of the contract. It does not appear affirmatively that it was *deducted by the commissioner*, and must be so now.

2. The deductions claimed because of erroneous weight of materials, because of the charges being made in the

extra and when they properly belonged to the contract account, and other items exceeding by $214.33 the amount of deductions made by the commissioner, are not supported by adequate proof to justify their allowance now against the report. Several witnesses give estimates upon the subject. Whatever may be their ability and experience they are opposed by the opinions of other witnesses not less entitled to credit. On such differences of opinion merely I shall not disturb the conclusion of the commissioner, drawn from a personal hearing of the witnesses. The general estimate of one witness, that the extra work and materials could all be supplied for $1,000, cannot prevail against the testimony of the witnesses who speak to the actual labor performed, and cost or value of materials furnished.

Positive accuracy and certainty cannot be hoped for in adjusting an account of many hundred items; and from the best examination I have been able to make of the exceptions, in the light of the proofs on paper, I am not convinced that any other error than that in relation to wharfage has been proved by the claimants. I shall accordingly order the report confirmed with a deduction of $31.25 for wharfage.

On entering final judgment, a question arose on taxation of witnesses' fees, under this state of facts, viz:

Most of the witnesses examined by the libelants before the court, and on the reference, were mechanics in the employ of the libelants, who paid them their daily wages, and afterwards, on taxation sought to include in the costs the fees of their attendance, they consuming the greater part of their day in attendance on the court. The clerk allowed for such attendance, from which the claimants appealed to the district judge, BETTS, who, after argument, decided as follows, viz:

*Per Curiam:* BETTS, D. J. The libelants had a taxation of fees to witnesses made in their bill of costs in this

cause, amounting to $110$\frac{50}{100}$. The claimant of the steamboat appeals from the taxation upon two grounds of exception thereto—

1. That the witnesses were not all called and sworn in court on the hearing of the cause.

2. That there is no proof furnished that the libelants have paid the fees charged, and that they cannot be taxed on any other authority than that of disbursements actually made.

The right to demand fees for witnesses attending for parties on the trial of causes in court, is derived wholly from statutory authority. The provision must be enforced according to its fair intendment. It is not to be restricted with a view to reduce or curtail the costs of suit, nor enlarged in order to secure a liberal or even reasonable compensation for his charges to the party to whom costs are granted.

The act of congress of February 26, 1853, governs the points now in question. It determines the amount of fees payable to witnesses, and the manner in which they are recoverable in favor of one litigant party against the other.

A witness cannot be compelled to attend court on a subpœna in a private action, unless his lawful fees are advanced to him. And the party who obtains judgment for costs in the cause becomes entitled to re-payment of such advances, if it be proved that the witness attended on the subpœna, and was material to the case. The witness has no remedy for his fees, except against the party who subpœnaed him—they being deemed as to all others satisfied to him when the subpœna is served, or to be matter of charge solely between the witness and the party who summoned him. When then the prevailing party seeks to recover those fees, against his adversary, the law authorizes him to claim them only as reimbursements actually made by him. "*The amount paid witnesses* shall

be taxed, and be included in, and form a portion of a judgment or decree against the losing party." (10 *Statutes at Large*, § 3, 168.)

The affidavit of the libelants' proctor is, that the witnesses were in their employment on day's wages exceeding the taxable fees of witnesses, and that they continued to receive their *per diem* compensation whilst in attendance in court; and that evidence, it is supposed, is equivalent to a specific payment of fees *eo nomine*.

It is enough to say the law nowhere authorizes the substitution of an equivalent debt or equity owing to the suitor, by a witness, as payment and satisfaction of his fees by the suitor. The suitor acquires a right to judgment for the fees of witnesses subœpnaed by him only on the fact of his having actually paid the money. The taxing officer is not empowered to take an account between the witness and the party who summoned him to ascertain whether a balance on their general dealings remains payable to the witness equal to the amount of the fees claimed.

The taxation appealed from was accordingly erroneous, and must be reversed. It may be corrected by subtracting from the gross bill the items of fees to which the appeal applies, or a taxation *de novo* be had.

Appeal sustained, and taxation reversed.

From the whole decree the claimants appealed to the circuit court of the United States, where the appeal was argued by E. C. BENEDICT, *for appellant*, and D. McMAHON, *for appellee*. Judge NELSON affirmed the judgment, delivering the following opinion, viz :

NELSON, C. J. The libel was filed in this case to recover the balance due on a special contract to build a boiler for the *Highlander*, the balance being $1,400 and interest, and also for work done over and beyond the contract amounting to some $1,488.95. A decree was rendered in the court below for both sums. The latter account is not seriously in dispute. The balance on the contract is con-

tested on the ground that the credit was given to Cornell, the owner, and not to the vessel. This contract was entered into between the parties on the 2d February, 1855, by which Cornell agreed to pay for the boiler, $1,000 on the 1st of March, $1,000 by the 1st April, $1,000 when the boiler was on board and complete, and the balance by note at three months from the time of completion. Cornell neglected or refused to give the note as agreed, and this item has therefore been included in the suit for the other portion of the work. There is no question but that the balance of the price for the boiler is due and payable, but it is insisted that the builders had no lien on the vessel, as the credit was given to the owner. The *Highlander* is a domestic vessel, and the lien therefore depends upon the state law. This law, at the date of the contract, provided that the lien shall cease twelve days after the vessel has left the port for some other one within the state. (2 *R. S.*, 733, §§ 1, 2.) By a subsequent law, passed March 25, 1855, the time is extended to sixty days. (*Session Laws*, 174, §§ 1, 2.)

So far as the question here is concerned, the latter law is not important. The contract was made before its enactment, and of course with reference to the old law.

On the part of Cornell, it is insisted that the agreement to take a note for the last instalment at three months was inconsistent with the idea of a lien on the vessel, as the event would occur, to wit: leaving her port in all human probability more than twelve days before the credit of three months would expire, and hence no lien could have been in the contemplation of the parties as to this payment.

On the part of the libelants, it is claimed that the whole of the contract price became due on the completion of the work; but that the last instalment was to be paid by a note at three months. And as the note was not given or tendered, this instalment became immediately due. The

question is a close one, and I have entertained some doubts about it. Judge INGERSOLL, who decided the case below, came to the conclusion that the lien existed, and enforced it by his decree. The mere giving of credit does not necessarily displace the lien. That has been held in several cases. The ground here is not that a credit was given, but that the credit is inconsistent with the idea of a lien, for the reason unless the boat should remain at her port for the three months the lien would be lost by the terms of the statute; and that this must have been within the contemplation of the parties. The case of *Peyroux* agt. *Howard*, (7 *Peters*, 344,) bears somewhat on this question. Here a contract giving an unconditional credit extending beyond the time which the law gives to the lien was considered as inconsistent with the idea of a lien, and operated as a waiver of it. The difference between that case and the present one is the credit given here is not absolute as in the above case, but conditional—that is, upon the owner's giving a note at three months; on neglecting or refusing to give which the credit ceased, for the demand then became immediately due and payable, according to a well settled law.

Now, it may be going too far to say that the builder must have intended to waive the lien upon the event of the refusal to give the note, for the case comes down to that. I agree that he did, if the agreement was kept on the part of Cornell, and the note given. But on his refusal to keep the agreement in respect to this instalment, there is certainly much justice in saying that the builder also should not be bound by it, but should be remitted to his rights independent of the contract. It may have been material to him whether this balance should remain in account, or in a note upon which funds could be raised.

The state act is very strong and positive. It declares that such debt (one like the libelants') " shall be a lien

upon such ship or vessel, &c., and shall be preferred to all other liens thereon except mariners' wages." There is no condition or qualification attached, as in cases of maritime liens under the admiralty, except that the work shall be done on the vessel, or supplies furnished. The affirmative, therefore, lies on the claimant to displace the lien. That it is insisted has been done, by showing a contract inconsistent with any such lien; but this assumes that the contract has been fulfilled, in which case the inference is clear; but is the party equally subject to this inference when it has been broken? It seems to me not. As I read the contract, the builder agrees to give three months' credit, on the owner's giving a note of that tenor; if not, then no credit was given. This is certainly the legal effect in case of the refusal, and I do not see why it should not be considered as the meaning and intent of the parties.

Upon the whole, I am inclined to agree with the court below, and affirm the decree.